UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CR-60197-SMITH

UNITED STATES OF AMERICA,

    *Plaintiff,*

vs.

KEITH MAHLON DUNKLEY,

    *Defendant.*

_____/

## PLEA AGREEMENT

The United States Attorney's Office for the Southern District of Florida ("this Office") and KEITH MAHLON DUNKLEY ("Defendant") enter into the following agreement:

1. Defendant agrees to plead guilty to the one-count Information, which charges Defendant with Conspiracy to Commit Wire Fraud in violation of Title 18, United States Code, Section 371.

2. Defendant is aware that the sentence will be imposed by the Court after considering the advisory Federal Sentencing Guidelines and Policy Statements (the "Sentencing Guidelines"). Defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a pre-sentence investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. Defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed and may raise or lower that advisory sentence under the Sentencing Guidelines. Defendant is further aware and understands that the Court is required to consider the

advisory guideline range determined under the Sentencing Guidelines but is not bound to impose a sentence within that advisory range; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range. Knowing these facts, Defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense identified in paragraph 1 and that Defendant may not withdraw the plea solely because of the sentence imposed.

3. Defendant also understands and acknowledges that the Court may impose a statutory maximum term of imprisonment of up to 5 years, followed by a term of supervised release of up to 3 years. In addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $250,000 and may order forfeiture and restitution.

4. Defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 2 and 3 of this agreement, the Court will impose a special assessment of $100. Defendant agrees that any special assessment imposed shall be paid at the time of sentencing. If Defendant is financially unable to pay the special assessment, Defendant agrees to present evidence to this Office and the Court at the time of sentencing as to the reasons for Defendant's failure to pay.

5. This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning Defendant and Defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in

this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

6. This Office agrees that it will recommend at sentencing that the Court reduce by 2 levels the sentencing-guideline level applicable to Defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon Defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing Defendant's offense level is determined to be 16 or greater, this Office will file a motion requesting an additional 1-level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that Defendant has assisted authorities in the investigation or prosecution of Defendant's own misconduct by timely notifying authorities of Defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. This Office, however, will not be required to make this motion and this recommendation if Defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

7. Defendant agrees to pay $36,040 plus any outstanding interest in restitution for the fraudulently obtained PPP and EIDL funds alleged in the Information.

8. The parties agree to jointly recommend probation in lieu of a term or incarceration.

9. Defendant is aware that the sentence has not yet been determined by the Court. Defendant also is aware that any estimate of the probable sentencing range or sentence that Defendant may receive, whether that estimate comes from Defendant's attorney, this Office, or the probation office, is a prediction, not a promise, and is not binding on this Office, the probation office or the Court. Defendant understands further that any recommendation that this Office makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. Defendant understands and acknowledges, as previously acknowledged in paragraph 3 above, that Defendant may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by Defendant, this Office, or a recommendation made jointly by Defendant and this Office.

10. Defendant agrees, in an individual and any other capacity, to forfeit to the United States, voluntarily and immediately, any right, title, and interest to any property, real or personal, which constitutes or is derived from proceeds traceable to and/or obtained directly or indirectly, as a result of such offense, pursuant to 18 U.S.C §§ 981(a)(1)(C) and 982(a)(2).

11. Defendant further agrees that forfeiture is independent of any assessment, fine, cost, restitution, or penalty that may be imposed by the Court. The Defendant knowingly and voluntarily agrees to waive all constitutional, legal, and equitable defenses to the forfeiture, including excessive fines under the Eighth Amendment to the United States Constitution. In addition, the Defendant agrees to waive: any applicable time limits for administrative or judicial forfeiture proceedings, the requirements of Fed. R. Crim. P. 32.2 and 43(a), and any appeal of the forfeiture.

12. Defendant also agrees to fully and truthfully disclose the existence, nature and location of all assets in which Defendant has or had any direct or indirect financial interest or

control, and any assets involved in the offenses of conviction. Defendant agrees to take all steps requested by the United States for the recovery and forfeiture of all assets identified by the United States as subject to forfeiture. This includes, but is not limited to, the timely delivery upon request of all necessary and appropriate documentation to deliver good and marketable title, consenting to all orders of forfeiture, and not contesting or impeding in any way with any criminal, civil or administrative forfeiture proceeding concerning the forfeiture.

13. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford Defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, Defendant hereby waives all rights conferred by Sections 1291 and 3742 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or an upward variance from the advisory guideline range that the Court establishes at sentencing. Defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b) and Title 28, United States Code, Section 1291. However, if the United States appeals Defendant's sentence pursuant to Sections 3742(b) and 1291, Defendant shall be released from the above waiver of his right to appeal his sentence.

14. Defendant further hereby waives all rights conferred by Title 28, United States Code, Section 1291 to assert any claim that (1) the statute to which Defendant is pleading guilty is unconstitutional, and/or (2) the admitted conduct does not fall within the scope of the statute of conviction.

15. By signing this agreement, Defendant acknowledges that Defendant has discussed the appeal waiver set forth in this agreement with Defendant's attorney. Defendant further agrees, together with this Office, to request that the Court enter a specific finding that Defendant's waiver of his right to appeal the sentence imposed in this case and his right to appeal his conviction in the manner described above was knowing and voluntary.

16. This is the entire agreement and understanding between this Office and Defendant. There are no other agreements, promises, representations, or understandings.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

DATE: 11/20/2023  BY: _____
TREVOR C. JONES
ASSISTANT UNITED STATES ATTORNEY

DATE: 12-4-23  BY: _____
MICHAEL DUTKO SR.
COUNSEL FOR DEFENDANT

DATE: 12.4.23  BY: _____
KEITH MAHLON DUNKLEY
DEFENDANT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CR-60197-SMITH

UNITED STATES OF AMERICA,

    *Plaintiff,*

vs.

KEITH MAHLON DUNKLEY,

    *Defendant.*

_____/

**FACTUAL PROFFER**

The United States of America and Defendant KEITH MAHLON DUNKLEY (the "Defendant") agree that, had this case gone to trial, the United States would have proven, beyond a reasonable doubt, the following facts, among others, which occurred in Broward County, in the Southern District of Florida and elsewhere:

*Overview of PPP Loans and EIDLs*

The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was designed to provide emergency financial assistance to those suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act is the PPP, which authorized forgivable loans to small businesses for job retention and certain other expenses. In the PPP loan application, the small business must state, among other things, its average monthly payroll expenses, and number of employees. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on certain permissible expense items and uses a certain amount of the PPP loan proceeds on payroll expenses.

Another related response to the COVID-19 outbreak was an expansion of an existing disaster-related program administered by the SBA, the Economic Injury Disaster Loan ("EIDL") program, to provide loans up to $150,000, and additional advance funds of up to $10,000, for small businesses experiencing a temporary loss of revenue due to the pandemic.

To qualify for an EIDL authorized by the CARES Act, applicants had to be: (1) a business, cooperative, or agricultural enterprise with 500 or fewer employees, a faith-based organization, a private non-profit, a sole proprietorship or an independent contractor; (2) physically located in the United States or a designated territory; and (3) have suffered working capital losses due to the COVID-19 pandemic.

### *Fraudulent Applications*

In January 2020, the Defendant registered Global Group Alliances, LLC with the Florida Department of State. He has been the Registered Agent and Title Owner/Manager since its inception and the company's principal and mailing address are the residential home of the Defendant. Global Group Alliances never had employees or meaningful revenue during times relevant to the charge in the Information.

On or about July 2020, the Defendant agreed to provide his business and personal information to a later identified coconspirator for the purpose of unlawfully applying for a PPP loan for Global Group Alliances, LLC.

On approximately July 31, 2020, the Defendant and his coconspirator submitted a PPP loan application on behalf of Global Group Alliances, LLC, which was electronically signed by the Defendant. The application was submitted to, and underwritten and disbursed by, an SBA-approved-lender, Lender 1, which is headquartered in Fort Lee, New Jersey.

The application listed the Broward County Sheriff's Office address for the business address and claimed an average monthly payroll of $7,416. These representations were materially false

statements that created the net loan amount of $18,540. In support of the application, the Defendant and his coconspirator submitted a falsified Internal Revenue Service Form Schedule C.

On August 4, 2020, Lender 1 disbursed the $18,540 in PPP loan proceeds, via interstate wire communication, into the Defendant's JPMorgan Chase bank account ending in 5715. The Defendant later paid his coconspirator a percentage of the loan proceeds as a fee in cash.

On or about August 4, 2020, the Defendant also submitted and caused the submission of an EIDL application to the SBA on behalf of Global Group Alliances, LLC, which contained materially false information as to (1) the business's gross revenues for the 12 months prior to the Date of Disaster; and (2) the business's number of employees as of the Date of Disaster.

As a result of the false and fraudulent EIDL application, the SBA approved a $17,500 loan to the Defendant and disbursed the loan proceeds via interstate wire communication to TD Bank account ending in 0161, in the name of Global Group Alliances, LLC, which was controlled by the Defendant.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

DATE: 11/20/2023            BY: _____
                                TREVOR C. JONES
                                ASSISTANT UNITED STATES ATTORNEY

DATE: 12-4-23               BY: _____
                                MICHAEL DUTKO SR.
                                COUNSEL FOR DEFENDANT

DATE: 12.4.23               BY: _____
                                KEITH MAHLON DUNKLEY
                                DEFENDANT

3